IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IDA L. MUDGE, | Case No. 1:18-cv-00804 |
| Plaintiff, | JUDGE CHRISTOPHER A. BOYKO |
| v. | MAGISTRATE JUDGE THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| | **REPORT & RECOMMENDATION** |
| Defendant. | |

**I.      Introduction**

Plaintiff, Ida Mudge, seeks judicial review of the final decision of the Commissioner of Social Security, denying her applications for supplemental security income ("SSI") under Title XIV of the Social Security Act. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Mudge's application for supplemental security income benefits be affirmed.

**II.     Procedural History**

On May 22, 2014, Mudge applied for SSI. (Tr. 156–64). Mudge Alleged that she became disabled on May 22, 2014,[1] due to "heart murmur, benign brain tumor, depression, asthma, [and] anxiety." (Tr. 11, 57, 156). The Social Security Administration denied Mudge's application initially and upon reconsideration. (Tr. 56–88). Mudge requested an administrative

---

[1] Mudge's application originally alleged an onset date of November 30, 2002; however, Mudge later amended her alleged onset date to May 22, 2014 – the date she filed her application. (Tr. 11, 156).

hearing. (Tr. 103–05). Administrative Law Judge ("ALJ") Susan Giuffre heard Mudge's case on October 25, 2016, and denied the claim in a March 29, 2017, decision. (Tr. 8–50). On February 12, 2018, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1–5). On April 10, 2018, Mudge filed a complaint to seek judicial review of the Commissioner's decision. ECF Doc. 1.

### III. Evidence

#### A. Personal, Educational and Vocational Evidence

Mudge was born on August 19, 1958, and she was 55 years old when she filed her application. (Tr. 156). She had a high school education, but she was put in slow learner classes from first through twelfth grade. (Tr. 41). She did not have any past relevant work. (Tr. 19, 46).

#### B. Relevant Testimonial Evidence

Mudge testified at the ALJ hearing. (Tr. 31–45). She stated that she lived with her father, and her chores included "light laundry, dusting, cooking, and mowing on a riding lawnmower. (Tr. 32–33). She also drove to the grocery store, to church, and to pay bills. (Tr. 32–33). When she grocery shopped, she had someone else carry her groceries into the house for her. (Tr. 33). Mudge stated that she spent her typical day watching her dad, who was bed ridden; however, he also had a caregiver. (Tr. 33–34). She also visited friends who lived close by, and she went to the drugstore. (Tr. 35).

Mudge testified that she last worked in 2013 cleaning offices for her brother. (Tr. 31–32, 44–45). She also worked for 15 years as a housekeeper, which involved dusting, doing dishes, cooking, doing laundry, and lifting up to 20 pounds. (Tr. 42). She was on her feet for all of her previous jobs. (Tr. 42). She had a job laser etching company names on tubing, where she lifted no more than 10 pounds. (Tr. 41). After that she worked as a washer and lifted no more than five pounds. (Tr. 44).

2

Mudge testified that she had a golf ball-sized brain lesion, which affected her ability to lift heavy things, deal with bright lights, and eat certain foods. (Tr. 34, 36). She also got bad headaches, threw up when she ate certain foods, had trouble getting out of bed, and lost weight. (Tr. 34–36). She said that her brain lesion was inoperable, and her doctors told her that she would talk slower and lose mobility as it progressed. (Tr. 36). Mudge testified that she had slowed down, and she went from being able to carry a gallon of milk or full laundry basket to only being able to carry a half gallon or half laundry basket. (Tr. 36, 41). Mudge received shots in her head every three months, which helped her brain lesion symptoms; however, she still got sick about once a month. (Tr. 34, 37). When she felt sick, she was in bed for a week. (Tr. 37).

Mudge also testified that she had limited shoulder range and hand numbness, due to a rotator cuff injury in 2000. (Tr. 39–40). Physical therapy helped her shoulder, but it continued to freeze in cold weather. (Tr. 40). She also received shots for her shoulder, but it continued to be weak. (Tr. 40). She did not have the money for surgery. (Tr. 41).

Jessica Christensen, a vocational expert ("VE"), also testified at the hearing. (Tr. 45–48). The ALJ told the VE that Mudge had no past relevant work. (Tr. 46). The ALJ asked the VE whether a hypothetical individual with Waters' age, education, and past relevant work experience could work if she had:

> no exertional limitations, but who could never climb ladders, ropes, or scaffolds; who would have to avoid concentrated exposure to fumes, odors, dust, gasses, and poor ventilation; who would have to avoid exposure to hazards such as industrial machinery and unprotected heights; who has the ability to understand and remember simple tasks; the ability to sustain concentration and persistence to perform simple, repetitive tasks; the capacity for superficial interaction; and the capacity to work in a static environment and adjust to changes if they are well explained and demonstrated with possibly extra time given to adjust.

(Tr. 46). The VE stated that the extra time required to learn new tasks or changes in the work environment would preclude such an individual from performing any work. (Tr. 46–47). The ALJ asked whether the above-described individual could work if the extra time limitation were

3

eliminated, and the VE testified that such an individual could work as a garment sorter, folder, and bench assembler. (Tr. 47).

On cross-examination by Mudge's attorney, the VE testified that the individual described in the ALJ's second hypothetical could not work, if she also required three unscheduled breaks that lasted 20 to 30 minutes during an eight-hour work period. (Tr. 47–48). The VE testified that no more than 10% of off-task time would be permitted in a single work shift. (Tr. 48). Further, the VE testified that, if the individual described in the ALJ's second hypothetical required spoken instructions with a visual demonstration, she could still work as a garment sorter, folder, and bench assembler. (Tr. 48).

**IV.     The ALJ's Decision**

The ALJ's March 29, 2017, decision found that Mudge was not disabled and denied her application for SSI. (Tr. 11–20). The ALJ found that Mudge had not engaged in substantial gainful activity since May 22, 2014, the application date. (Tr. 13). The ALJ found that Mudge had the severe impairments of: "history of asthma; (estimated) borderline intellectual functioning; and learning disorder." (Tr. 13). The ALJ determined that Mudge had no impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 15).

The ALJ determined that Mudge had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except that:

> The claimant can never climb ladders, ropes, and scaffolds. The claimant has to avoid concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation. The claimant has to avoid all exposure to hazards such as industrial machinery, unprotected heights. The claimant has the ability to understand and remember simple tasks; the ability to sustain concentration and persistence to perform simple repetitive tasks; capacity for superficial interaction; capacity to work in a static environment and adjust to changes if they are well explained and demonstrated.

4

(Tr. 16). In assessing Mudge's RFC, the ALJ stated that she "considered all symptoms" in light of the medical and other evidence in the record. (Tr. 16). The ALJ stated that Mudge's subjective complaints – including her alleged physical limitations – were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 17). The ALJ also stated that she gave great weight to the state agency consultants physical limitations opinions – finding that Mudge could perform work up to the heavy/very heavy exertional level, but could never climb ladders, ropes or scaffolds, should avoid concentrated exposure to pulmonary irritants, and all exposure to hazards. (Tr. 18, 65–67, 70, 82–83, 86–87). The ALJ also noted that Mudge was an individual of advanced age, and that she had a high school education. (Tr. 19).

Because Mudge's mental restrictions precluded her from being able to perform all or substantially all of the requirements of any level exertion, the ALJ determined that the medical-vocational guidelines did not direct a finding of either "disabled" or "not disabled." (Tr. 19). Thus, the ALJ relied on the VE's testimony to determine whether Mudge could perform a significant number of jobs, notwithstanding the non-exertional limitations in her RFC. (Tr. 19). Based on the VE's testimony and considering Mudge's RFC, age, education, and experience, the ALJ found that Mudge was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 19–20). In light of her findings, the ALJ determined that Mudge was not disabled from May 22, 2014, through the date of her decision and denied Mudge's application for SSI. (Tr. 20).

## V. Law & Analysis

### A. Standard of Review

The court's review is limited to determining whether the ALJ applied proper legal standards and reached a decision supported by substantial evidence. 42 U.S.C. §§ 405(g) and 1383(c)(3); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Kinsella v.*

5

*Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion. *Rodgers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Under this standard of review, a court cannot decide the facts anew, make credibility determinations, or re-weigh the evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (providing that, if the Commissioner's findings as to any fact are supported by substantial evidence, those findings are conclusive); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor when testifying."). Even if the court does not agree with the Commissioner's decision, or substantial evidence could support a different result, the court must affirm if the Commissioner's findings are reasonably drawn from the record and supported by substantial evidence. *See Elam*, 348 F.3d at 125 ("The decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Though the court's review is deferential, the court will not uphold the Commissioner's decision if the ALJ failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits

6

or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, however, we review decisions of administrative agencies for harmless error. Accordingly, . . . we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (citations and quotation omitted)). Furthermore, the court will not uphold a decision, even when supported by substantial evidence, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to supplemental security income or disability benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P; (4) if not, whether the claimant can perform her past relevant work in light of her RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v) and 416.920(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). The

claimant bears the ultimate burden to produce sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. §§ 404.1512(a) and 416.912(a).

  **B.**  **Disability Determination**

  Mudge argues that the ALJ erred at Step Five, by relying on the VE's testimony – that a hypothetical individual with Mudge's age, experience, and RFC could work as a garment sorter, folder, and bench assembler – in finding that Mudge was capable of performing a significant number of jobs. ECF Doc. 11, Page ID# 821–24. Specifically, Mudge asserts that the ALJ should not have relied on the VE's testimony because the jobs she described were unskilled light work, and the Medical Vocational Guidelines direct a "disabled" finding for people of advanced age who are limited to unskilled, light work. *Id.* at 822. Mudge contends that, although the ALJ did not find that she had an exertional limitation, the VE's testimony indicated that only work in the light range was available to her and did not indicate that any medium or heavy work was available. *Id.* at 822–23.

  The Commissioner responds that the ALJ properly relied on the VE's testimony in finding that Mudge could work. ECF Doc. 13, Page ID# 831–34. The Commissioner argues that the ALJ was not required to apply the vocational guidelines for "light work," because the VE's testimony did not reduce Mudge's exertional capacity and the capacity to perform the heavy or very heavy exertional levels includes the ability to perform work at the light exertional level. *Id.* at 832–33. Further, the Commissioner argues that, because the ALJ's hypothetical was based on the ALJ's independent RFC determination and the VE testified that Mudge could perform work with 168,000 positions in the national economy, the ALJ properly found that Mudge was not disabled. *Id.* at 833–34.

  Mudge replies that she does not argue that the ALJ should have changed or reduced her RFC based on the VE's testimony, but argues that the VE's "testimony does not constitute a

significant number of jobs on which the ALJ can rely." ECF Doc. 14, Page ID# 828. She argues that, because the medical-vocational guidelines "recognize that jobs in the sedentary and light occupational base do not represent a significant number of jobs for someone Ms. Mudge's age," the ALJ failed to apply proper legal standards in relying upon the VE's testimony that Mudge could perform jobs that were classified as light work. *Id.* at 838–39.

At Step Five of the sequential analysis, the burden shifts to the Commissioner to produce evidence supporting the contention that the claimant can perform a significant number of jobs in the national economy. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002); 20 C.F.R. § 416.920(a)(4)(v). An ALJ may determine whether the claimant has the ability to perform work in the national economy by applying the medical-vocational guidelines. 20 C.F.R. § 416.969; 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00. The medical-vocational guidelines establish matrices that correlate variables—including the claimant's RFC, age, educational background, and previous work experience. *See generally* 20 C.F.R. Pt. 404, Subpt. P, App. 2. When these variables are entered into the appropriate matrix, a finding of disabled or not disabled is directed. *Id.* Nevertheless, the medical-vocational guidelines "do not cover all possible variations of factors." 20 C.F.R. § 416.969. When a claimant's particular characteristics do not coincide with a rule's corresponding criteria, such as when a claimant is unable to perform the full range of a category of work, the medical-vocational guidelines do not direct a conclusion of disabled or not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a), (d).

Age and education are vocational characteristics that affect a claimant's ability to work. 20 C.F.R. § 416.963(a), 416.964. A person under aged 55 or older is classified as a "person of advanced age." 20 C.F.R. § 416.963(e). A person with a 12th grade education or above is classified as having "high school education and above," and is generally considered to be able to

9

do semi-skilled through skilled work.  20 C.F.R. § 416.964(b)(4).  The medical-vocational guidelines direct a finding of "disabled" when a claimant is limited to sedentary or light work, is classified as a person of advanced age, is a high school graduate, and does not have transferrable skills from previous work.  20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 201.06 and 202.06.  However, the guidelines direct a finding of "not disabled" when a claimant is limited to medium work, is classified as a person of advanced age, has a limited or high school education, and does not have transferrable skills from previous work.  20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 203.02–203.09.  A person who is able to perform the full range of heavy or very heavy work is "not disabled."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 204.00.  "The functional capacity to perform medium, heavy, and very heavy work includes the functional capacity to perform sedentary, light, and medium work."  20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 203.00(a), 204.00.

Alternatively, an ALJ may determine that a clamant has the ability to adjust to other work in the national economy by relying on a vocational expert's testimony that the claimant has the ability to perform specific jobs.  *Howard*, 276 F.3d at 238.  A vocational expert's testimony in response to a hypothetical question is substantial evidence when the question accurately portrays the claimant's RFC.  *See id.* (stating that "substantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments" (internal quotation marks omitted)); *see also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013) (unpublished) (stating that the ALJ's hypothetical question must "accurately portray[] a claimant's vocational abilities and limitations").  "An ALJ is only required to incorporate into a hypothetical question those limitations he finds credible."  *Lee*, 529 F. App'x at 715; *see also Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

10

("If the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints.").

In *Anderson v. Comm'r of Soc. Sec.*, the claimant argued that, when the ALJ found that he had the RFC to perform light work, but the VE's testimony only identified jobs that were classified as sedentary work, the VE's testimony would change his RFC to sedentary work and the medical-vocational guidelines would direct a finding of "disabled."  406 F. App'x 32, 36 (6th Cir. 2010) (unpublished).  The Sixth Circuit rejected that argument, noting that the VE does not testify about what the claimant is physically capable of doing, but only about what jobs are available in light of the claimant's abilities.  *Id.* at 36.  The Court noted that such VE testimony reflects only the "unremarkable proposition that the jobs she had identified were so limited in their exertional requirements that they could be performed by workers limited to less than light work."  *Id.* (quotation omitted).

The ALJ applied proper legal procedures and reached a conclusion supported by substantial evidence in determining that Mudge was not disabled at Step Five.  42 U.S.C. §§ 405(g), 1383(c)(3); *Elam*, 348 F.3d at 125; *Kinsella*, 708 F.2d at 1059.  Because the ALJ determined that Mudge could perform work at any exertional level, but had non-exertional restrictions that prevented her from performing the full range of work at any exertional level, the medical vocational guidelines did not direct a finding that Mudge was disabled or not disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a), (d).  Thus, the ALJ properly relied on VE testimony to determine whether Mudge was disabled.  *Howard*, 276 F.3d at 238; (Tr. 19).  Further, the VE's testimony that Mudge could work as a garment sorter, folder, and bench assembler was substantial evidence supporting the ALJ's conclusion that Mudge could perform a significant number of jobs, because – as Mudge notes in her merits brief – the ALJ's hypothetical question reflected Mudge's actual characteristics and RFC, excluding the alleged

11

functional limitations that the ALJ did not find credible. *Howard*, 276 F.3d at 238; *Lee*, 529 F. App'x at 715; *Blacha*, 927 F.2d at 231; (Tr. 16, 46–47). Moreover, Mudge's argument – that the VE's testimony was not substantial evidence to support a "not disabled" finding because it only indicated that she could perform light work, and the medical-vocational guidelines would direct a "disabled" finding if she were limited to light work – is unavailing because: (1) Mudge's ability to perform work at higher exertional levels includes the ability to perform light work; and (2) the VE's testimony does not indicate what level of work Mudge was capable of doing, but only that there were jobs available in light of her ability to perform work at any exertional level, notwithstanding her non-exertional limitations. *Anderson*, 406 F. App'x at 36; 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 203.00(a), 204.00. Therefore the ALJ properly concluded that Mudge was not disabled under the Social Security Act and denied her application for SSI, and the court should not disturb that decision. 42 U.S.C. §§ 405(g), 1383(c)(3); *Jones*, 336 f.3d at 476; *Elam*, 348 F.3d at 125; *Rogers*, 486 F.3d at 241.

## VI. Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Mudge's application for SSI be AFFIRMED.

Dated: February 28, 2019

Thomas M. Parker
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See

*U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).